**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MARVIN DUBON MIRANDA, *et al.*    *
                                  *
v.                                *          Civil No. 20-1110
                                  *
WILLIAM P. BARR, *et al.*         *
                                  *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Immigration and Customs Enforcement ("ICE") detainees Marvin Dubon Miranda, Ajibade Thompson Adegoke, and Jose de la Cruz Espinoza (the "lead plaintiffs"), filed a class action complaint and petition for writ of habeas corpus contesting the adequacy of the bond hearings that resulted in their detention. (ECF 1).[1] Now pending is the lead petitioners' motion for a temporary restraining order ("TRO") and/or a preliminary injunction. (ECF 15). The motion is fully briefed, and no hearing is necessary. For the reasons explained below, the motion will be granted.

## BACKGROUND

### I.   Statutory and regulatory framework

The lead plaintiffs and the members of the proposed class are detained under 8 U.S.C. § 1226(a), the provision of the Immigration and Nationality Act ("INA") that governs the arrest and detention of noncitizens pending a decision on removal. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). Section 1226(a) provides that:

On a warrant issued by the Attorney General, an alien may be arrested and detained

---

[1] The lead plaintiffs name as defendants Attorney General William P. Barr; Chad F. Wolf, Acting Secretary of the U.S. Department of Homeland Security; Matthew T. Albence, Deputy Director and Senior Official Performing the Duties of the Director of Immigration and Customs Enforcement ("ICE"); James McHenry, Director of the Executive Office for Immigration Review; Janean A. Ohin, Acting Director of ICE's Baltimore Field Office; William Delauter, Corrections Bureau Chief of Frederick County Adult Detention Center; Jack Kavanagh, Director of the Howard County Department of Corrections; and Donna Bounds, Warden of Worcester County Detention Center. (ECF 1).

pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c)[2] and pending such decision, the Attorney General--

> (1) may continue to detain the arrested alien; and
> (2) may release the alien on--
>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>> (B) conditional parole; but
> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a).

Pursuant to federal regulations, an ICE officer makes an initial custody determination upon arrest. *See* 8 C.F.R. § 236.1(c)(8). If the noncitizen can demonstrate that she is neither a flight risk nor poses a danger to the community, the ICE officer may release the noncitizen on bond or other conditions of release. *Id.* The noncitizen may later seek review of the initial bond determination by an Immigration Judge ("IJ") at a bond hearing. 8 C.F.R. § 1236.1(d)(1); *accord Jennings,* 138 S. Ct. at 847. Thereafter, the noncitizen may appeal the IJ's determination to the Board of Immigration Appeals ("BIA"). *See* 8 C.F.R. §§ 1236.1(d)(3), 1003.1(b)(7).

Neither § 1226(a) nor its implementing regulations specify who bears the burden of proof at bond hearings, but the BIA currently requires that the noncitizen "show to the satisfaction of the Immigration Judge that he or she merits release on bond." *See In Re Guerra,* 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *accord Brito v. Barr*, 395 F. Supp. 3d 135, 145 (D. Mass. 2019). Moreover, while § 1226(a) prescribes a minimum bond amount—$1,500—there is no explicit requirement either in the statute or the regulations that an IJ consider, when setting bond, a noncitizen's ability to pay. *See, e.g., In re Castillo-Cajura*, 2009 WL 3063742, at *1 (B.I.A. Sept. 10, 2009)

---

[2] Section 1226(c) provides for mandatory detention pending removal for certain classes of noncitizens. *See* 8 U.S.C. § 1226(c). The parties agree that § 1226(c) does not apply here.

(noting, in an unpublished opinion, that "an alien's ability to pay the bond amount is not a relevant bond determination factor").

## II.    Lead plaintiffs[3]

### A.  Marvin Dubon Miranda

Mr. Dubon Miranda is a 35-year old man from El Salvador who has been in the United States for over ten years. (Compl. ¶¶ 33, ECF 1). Prior to his detention, he resided in Baltimore City, Maryland, with his partner, who is dying of end-stage renal disease. (Compl. ¶¶ 6, 33). He is seeking withholding of removal and protection under the Convention Against Torture ("CAT") related to his resistance to MS-13 control of his community in El Salvador. (*Id*. ¶ 33). Mr. Dubon Miranda and his ex-wife co-parent their 13-year old son, who lives in Maryland with his mother. (*Id*. ¶¶ 33–34). Prior to his detention, Mr. Dubon Miranda worked as a construction worker to financially support himself, his partner, and his son. (*Id*. ¶ 37).

Mr. Dubon Miranda was taken into ICE custody on December 12, 2019, after being sentenced to 60 days incarceration for driving under the influence ("DUI"). (Compl. ¶ 33). He had previously been convicted of a DUI in 2017 and states that he struggles with alcohol dependence. (*Id*. ¶ 35). On February 26, 2020, Mr. Dubon Miranda had a bond hearing in Baltimore Immigration Court in front of IJ Elizabeth Kessler. (*Id*. ¶ 38). He was represented by counsel and presented evidence in support of his request for release on bond. (*Id*.). Upon finding that Mr. Dubon Miranda had failed to prove he was not a danger to the community, however, the IJ denied bond. (*Id*. ¶ 39).

At the time the Complaint was filed, Mr. Dubon Miranda was in ICE custody at the Howard County Detention Center ("HCDC"). (*Id*. ¶ 6). On May 18, 2020, however, Mr. Dubon

---

[3] As explained more fully below, the claims for injunctive relief by two of the three lead plaintiffs are now moot.

Miranda's application for withholding of removal was granted, and he was released from ICE custody. (*See* ECF 20).[4]

B.  Ajibade Thompson Adegoke

Mr. Thompson is a 42-year old man from Nigeria who came to the United States in 2017 on a tourist visa. (Compl. ¶ 41). Prior to his detention, he worked as a driver for a Baltimore company, and had no criminal record except for traffic violations. (*Id*. ¶¶ 43–44). He is seeking asylum on the basis of threats to him and his family by members of a political party in Nigeria. (*Id*. ¶ 41). Mr. Thompson's wife and five children remain in Nigeria, and due to his detention, Mr. Thompson was unable to contact them to determine whether they are safe. (*Id*.). Mr. Thompson has strong ties to the Jehovah's Witness community in Baltimore. (*Id*.).

Mr. Thompson was charged with theft in October 2019, which he contends was based on a supermarket employee's mistaken belief that Mr. Thompson was stealing from the store. (Compl. ¶ 42). The police issued Mr. Thompson a citation instructing him to appear in court at a later date. (*Id*.). Mr. Thompson inadvertently missed his court date, but, upon realizing his mistake, he went to the courthouse on October 19, 2019, and turned himself in. (*Id*.). The theft charge was dropped on November 15, 2019, but Mr. Thompson was held until November 18, 2019, when he was taken into ICE custody. (*Id*.).

On December 2, 2019, Mr. Thompson had a bond hearing at the Baltimore Immigration Court before IJ Kessler. (Compl. ¶ 45). He appeared *pro se* via video teleconferencing, did not know he would be having a bond hearing that day, and did not know what was expected of him during the hearing. (*Id.*). The IJ did not ask him what his financial situation was, nor did she ask

---

[4] The Joint Notice informing the court of Mr. Dubon Miranda's release indicates that he was released from Worcester County Detention Center, (*see* ECF 20), while the Complaint states that he was being detained at HCDC, (*see* Compl. ¶ 6). This discrepancy has no bearing on the outcome of this motion, as there is no dispute that Mr. Dubon Miranda was in ICE custody prior to his release.

Mr. Thompson to tell the court why he was neither a danger nor a flight risk. (*Id*.). The IJ ultimately set bond at $15,000, an amount Mr. Thompson was unable to pay. (*Id*.). He later requested a bond reduction to $5,000, to which the court did not respond. (*Id*. ¶ 46).

At the time the Complaint was filed, Mr. Thompson was detained at the Worcester County Detention Center. (*Id*. ¶ 7). On May 7, 2020, however, Mr. Thompson's application for asylum was granted and he was released. (*See* ECF 18).

C.  Jose de la Cruz Espinoza

Mr. de la Cruz Espinoza is a 25-year old man from Mexico who came to the United States in 2008, when he was 14 years old. (Compl. ¶ 49). Prior to his detention, Mr. de la Cruz Espinoza resided in Georgetown, Delaware, with his wife, with whom he runs a landscaping company, and their four U.S. citizen children. (*Id*.). Mr. de la Cruz Espinoza is currently seeking Cancellation of Removal relief ("42B Cancellation") and asylum. (*Id*.).

Mr. de la Cruz Espinoza was taken into ICE custody as a result of pending criminal charges for two counts of Second Degree Assault and Malicious Destruction of Property Valued <$1,000, which arose from a dispute between Mr. de la Cruz Espinoza and his brother. (Compl. ¶ 50).[5] After Mr. de la Cruz Espinoza's daughter called the police, Mr. de la Cruz Espinoza was arrested, and his criminal bond initially set at $1,500. (*Id*.). At a bail review hearing, however, the judge ordered Mr. de la Cruz Espinoza released on his own recognizance. (*Id*.). Before Mr. de la Cruz Espinoza could be released, ICE took Mr. de la Cruz Espinoza into custody and brought him to HCDC. (*Id*.)

On February 19, 2020, Mr. de la Cruz Espinoza had a bond hearing in the Baltimore Immigration Court in front of IJ Kessler. (Compl. ¶ 54). He was represented by counsel and

---

[5] According to the Complaint, no one was harmed in the dispute and Mr. de la Cruz Espinoza's wife (who was present at the time) and brother both wish for the charges to be dropped. (Compl. ¶ 50).

requested bond be set at $5,000. (*Id.*). According to the Complaint, Mr. de la Cruz Espinoza's bond hearing lasted approximately five to ten minutes, he did not know it was his burden to prove that he is not a danger to the community nor a flight risk, and he had trouble understanding what was happening due to a language barrier. (*Id.* ¶¶ 54–55). The IJ set bond at $20,000, which Mr. de la Cruz Espinoza asserts is too high for him or his family to pay. (*Id.* ¶ 55).

On March 4, 2020, Mr. de la Cruz Espinoza had another hearing before IJ Kessler, at which he appeared *pro se*. (Compl. ¶ 56). Mr. de la Cruz Espinoza asked the IJ to reconsider bond due to his inability to pay. (*Id.*). The IJ denied the request, stating she could only reduce bond if he filed a motion showing changed circumstances. (*Id.*).[6] Mr. de la Cruz Espinoza remains detained at HCDC.

## III.    The class action complaint

The lead plaintiffs bring this class action on behalf of themselves and all people who are or will be detained under 8 U.S.C. § 1226(a), and had or will have a bond hearing before the Baltimore Immigration Court in Baltimore, Maryland. (Compl. ¶ 4). At bond hearings held in Baltimore Immigration Court, a noncitizen seeking release on bond bears the burden of proving that she is neither a danger to the community nor a flight risk. (*Id.* ¶¶ 26, 30). Moreover, there is no requirement that IJs in the Baltimore Immigration Court consider an individual's ability to pay when setting bond amounts, which are frequently set between $8,000 and $15,000 and—unlike in the criminal context—must be paid upfront and in full. (*Id.* ¶ 27).

On behalf of themselves and all members of the proposed class, the lead plaintiffs bring

---

[6] According to the Complaint, the government introduced at this hearing a form I-213 stating that Mr. de la Cruz Espinoza accepted voluntary departure and returned to Mexico in 2011, which would make him ineligible for 42B Cancellation of Removal relief. (Compl. ¶ 56). Mr. de la Cruz Espinoza states that did not have a chance to review this document before the hearing, but asserts that he did not return to Mexico in 2011, nor has he left the United States at all since 2008. (*Id.*; de la Cruz Espinoza Decl. ¶ 15, ECF 1-15).

two claims for relief. In Count One, they allege that Fifth Amendment due process is violated

when the government detains individuals under § 1226(a) absent the following procedures: (1) a

bond hearing where the *government* bears the burden to justify continued detention by proving

by clear and convincing evidence that the individual is a flight risk or a danger to others; and (2)

an assessment of an individual's ability to pay bond and the suitability of alterative conditions of

release. (Compl. ¶¶ 69–70). Because the lead plaintiffs, "and all members of the proposed class,

are or will be detained without receiving a bond hearing with these basic requirements," they

allege that their detention violates the Fifth Amendment. (*Id.* ¶ 71). In Count Two, the lead

plaintiffs allege that their detention also violates the INA because a correct interpretation of §

1226(a) requires that the government "adequately consider[] detained individuals' financial

circumstances and whether alternative nonmonetary conditions of release would sufficiently

mitigate flight risk." (*Id.* ¶¶ 74–75). The lead plaintiffs seek class certification, declaratory relief,

and an order that each member of the class be released unless provided with a new bond hearing.

(*Id.* at 27).

## IV.   TRO and/or preliminary injunction

On May 5, 2020, the lead plaintiffs filed a motion for a TRO and/or a preliminary

injunction, asking the court to immediately order new bond hearings that (1) shift the burden of

proof to the government to demonstrate, by clear and convincing evidence, that a noncitizen is a

flight risk or poses a danger to the community; and (2) consider a noncitizen's ability to pay

bond and suitability for alternative conditions of release. (Mot. at 1–2, ECF 15-1). The lead

plaintiffs assert that they are likely to succeed on the merits of the class action complaint, and

that they will suffer irreparable harm if the court declines to impose a TRO or preliminary

injunction. The lead plaintiffs argue that continued detention pursuant to procedurally flawed

bond hearings in itself constitutes irreparable harm, but also that "the threat of irreparable harm is especially severe in light of the COVID-19 pandemic." (*Id*. at 2).

In response, the defendants first argue that the court does not have jurisdiction over the lead plaintiffs' claims because (1) the lead plaintiffs failed to exhaust their administrative remedies, and (2) 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B) strip the district court of jurisdiction to review discretionary judgments of the Baltimore Immigration Court. (Opp'n at 2–3, 12–16, ECF 19-1). The defendants also contend that the lead plaintiffs' claims fail to make the required showing to justify imposition of a TRO or preliminary injunction. (*Id*. at 3, 27–28).

## DISCUSSION

### I.    Mr. Dubon Miranda's and Mr. Thompson's release from detention

As an initial matter, the court considers the impact of Mr. Dubon Miranda's and Mr. Thompson's release from detention. As they have been released from ICE custody, their claims for injunctive relief are now moot. *See United States v. Hardy*, 545 F. 3d 280, 283 (4th Cir. 2008) ("a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (citation omitted)). The mootness of Mr. Dubon Miranda's and Mr. Thompson's claims does not, of course, affect Mr. de la Cruz Espinoza's claims; Mr. de la Cruz Espinoza could, based on his own claims regarding the deficiencies of his bond hearing, represent the entire proposed class. But in light of the timing of Mr. Dubon Miranda's and Mr. Thompson's releases, and the real possibility that Mr. de la Cruz Espinoza may also be released prior to the resolution of this case, the court deems it prudent to explain why the mootness of proposed class members' claims does not prevent courts from reaching the merits in a case involving "inherently transitory claims" such as these.

In *Cty. of Riverside v. McLaughlin*, which involved a class action constitutional challenge

by pretrial detainees, the Supreme Court held "[t]hat the class was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction." *See* 500 U.S. 44, 52 (1991). The *McLaughlin* Court observed that "some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires," *id*. at 52 (citations and brackets omitted), and that "[i]n such cases, the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution," *id*.

Here, the claims alleged in the Complaint fall squarely in the category of "inherently transitory" claims. "The 'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013) (citation omitted). That is this case. The lead plaintiffs and members of the proposed class are (or were) subject to § 1226(a) detention, the length of which "cannot be ascertained at the outset, and [] may be ended at any time[.]" *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975), and describing claims by pretrial detainees challenging conditions of detention as those that are "inherently transitory"); *see also Brito*, 395 F. Supp. 3d at 146 (§ 1226(a) detainees' claims that their bond hearings were constitutionally and statutorily inadequate "satisfie[ed] the inherently transitory exception").

Accordingly, even if all three of the lead plaintiffs' claims were moot here, the court could proceed to the merits pursuant to the "relation back" doctrine. The court need not decide at this time whether Mr. Dubon Miranda and Mr. Thompson remain proper class representatives, as no class has yet been certified. *See Geraghty*, 445 U.S. at 407.

## II.   Jurisdiction

The court next considers the defendants' argument that the court lacks jurisdiction to consider the lead plaintiffs' claims. The defendants argue that (1) the lead plaintiffs were required to exhaust their administrative remedies before pursuing relief in federal court, and (2) 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B) bar federal court jurisdiction over the claims. For the reasons explained below, both arguments fail, and the court may exercise jurisdiction here.

### A.   Administrative exhaustion

Federal regulations provide that noncitizens subject to § 1226(a) detention may file with the BIA "[a]n appeal relating to bond and custody determinations." *See* 8 C.F.R. § 1236.1(d)(3); *see also* 8 C.F.R. § 1003.1(b)(7). But administrative exhaustion is *required* only for challenges to final orders of removal. *See Jarpa v. Mumford*, 211 F. Supp. 3d 706, 710 (D. Md. 2016) (citing 8 U.S.C. § 1251(d)(1)). Where exhaustion is not required by statute, "sound judicial discretion must govern the Court's decision of whether to exercise jurisdiction absent exhaustion." *Id.* at 710–11 (citing *Welch v. Reno*, 101 F. Supp. 2d 347, 351 (D. Md. 2000) (further citation omitted)); *see also Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) ("In the habeas context, exhaustion is a prudential rather than jurisdictional requirement").

"In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). The Supreme Court has outlined "at least three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion": (1) where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim"; (2) where "an administrative remedy may be inadequate because of

some doubt as to whether the agency was empowered to grant effective relief"; and (3) where "an administrative remedy may be inadequate [because] the administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id*. at 146–47 (citations and quotation marks omitted).

Here, the claims raised in the Complaint fall into the first and third *McCarthy* circumstances. As to the first circumstance, the lead plaintiffs' and proposed class members' continued deprivation of liberty, without the bond hearing procedures they claim are constitutionally and statutorily required, "constitutes the kind of irreparable harm which forgives exhaustion." *See Jarpa*, 211 F. Supp. 3d at 711 (citation omitted). As the *Jarpa* court reasoned, "if . . . continued detention is indeed unconstitutional, every subsequent day of detention without remedy visits harm anew. Further, because the harm is loss of liberty, it is quintessentially the kind of harm that cannot be undone or totally remedied through monetary relief." *Id*. (citation omitted). As to the third circumstance, it is clear here that the administrative remedy may be inadequate, as the BIA appears to have predetermined the issues presented in the Complaint. As noted above, the BIA has consistently held that "[t]he burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond," *see Guerra,* 24 I. & N. Dec. at 40; *see also In Re Adeniji*, 22 I. & N. Dec. 1102, 1102 (B.I.A. 1999), and, in several unpublished opinions, has stated that an IJ need not consider a noncitizen's ability to pay a set bond amount, *see Castillo-Cajura*, 2009 WL 3063742, at *1; *In re Sandoval-Gomez*, 2008 WL 5477710, at *1 (B.I.A. Dec. 15, 2008).

Before exercising its discretion to excuse exhaustion, however, the court must decide whether the "'twin purposes of protecting administrative agency authority and promoting judicial efficiency'" are outweighed by the lead plaintiffs' and proposed class members' interest in

prompt resolution of their claims. *See Jarpa*, 211 F. Supp. 3d at 712 (quoting *Volvo GM Heavy Truck Corp. v. U.S. Dep't of Labor*, 118 F.3d 205, 208–09 (4th Cir. 1997)). Here, the court finds that the lead plaintiffs' claims do not present a threat to administrative agency authority or judicial efficiency. Even if the court were to grant all of the lead plaintiffs' claims, the ultimate decision of whether to detain or release the members of the proposed class would remain within the executive branch. And deciding the legal and constitutional questions raised in the Complaint here may, in fact, promote judicial efficiency, as a decision on the merits of these claims may prevent future litigation on these same issues. Accordingly, the court will exercise its discretion to excuse administrative exhaustion here.

B.  8 U.S.C. §§ 1226(e), 1252(a)(2)(B)

Section 1226(e), which governs judicial review of action taken pursuant to § 1226(a), provides that:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). A district court thus cannot review custody determinations that an IJ, pursuant to her delegated authority, has made regarding a noncitizen's detention or release. *See Jennings*, 138 S. Ct. at 841 (citation omitted). Section 1226(e), however, does not preclude challenges to "the Government's detention authority under the 'statutory framework' as a whole," or challenges to the "constitutionality of the entire statutory scheme under the Fifth Amendment." *Id.* Section 1252(a)(2)(B) similarly provides, in relevant part, that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is

specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii). While this provision, like § 1226(e), precludes judicial review of discretionary action by an IJ, "[i]t does not limit habeas jurisdiction over questions of law." *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (citation and quotation marks omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (§ 1252(a)(2)(B)(ii) does not bar challenges to the extent of the Attorney General's authority to detain a noncitizen, as "the extent of that authority is not a matter of discretion").

The defendants characterize the lead plaintiffs' claims as challenges to the IJ's weighing of evidence and factual findings and argue that, accordingly, §§ 1226(e) and 1252(a)(2)(B) strip this court of jurisdiction to hear the claims. (Opp'n at 15). But the lead plaintiffs' claims are not, in fact, challenges to the IJ's weighing of evidence and factual findings. They are challenges to the procedures used during § 1226(a) bond hearings, which, argue the lead plaintiffs, violate due process and the INA. These claims are outside the scope of the jurisdiction-stripping provisions of §§ 1226(e) and 1252(a)(2)(B). *See Hernandez*, 872 F.3d at 988, (claims that the "discretionary process itself was constitutionally flawed" are not barred by §§ 1226(e) and 1252(a)(2)(B) (citation omitted)); *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 688–89 (D. Mass. 2018) (section 1226(e) does not bar constitutional challenges to the immigration bail system); *Gordon v. Shanahan*, No. 15 CV. 261, 2015 WL 1176706, at *2 (S.D.N.Y. Mar. 13, 2015) (section 1226(e) does not deprive the court of jurisdiction over constitutional and statutory challenges to detention).[7] Accordingly, the court has jurisdiction over the lead plaintiffs' claims and will proceed to the merits of their motion.

---

[7] Unpublished opinions are cited for the persuasiveness of their reasoning, not for any precedential value.

### III.     TRO or preliminary injunction

A party seeking a preliminary injunction must establish: (1) the likelihood of success on the merits; (2) the likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in favor of issuing the preliminary injunction; and (4) that the injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). Where, as here, a requested injunction is mandatory rather than prohibitory,[8] the party seeking the injunction must also demonstrate that "a mandatory preliminary injunction [is] necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." *In re Microsoft Corp. Antitrust Litig*., 333 F.3d 517, 526 (4th Cir. 2003), *abrogated on other grounds by eBay, Inc. v. MercExchange, L.L.C*., 547 U.S. 388 (2006).

"The standard for a temporary restraining order is the same as a preliminary injunction." *Maages Auditorium v. Prince George's Cty., Md*., 4 F. Supp. 3d 752, 760 (D. Md. 2014), *aff'd*, 681 F. App'x 256 (4th Cir. 2017); *see* Fed. R. Civ. P. 65. Because the lead plaintiffs seek injunctive relief lasting beyond the fourteen-day limit for TROs, and the defendants have had an opportunity to oppose the requested relief, *see* Fed. R. Civ. P. 65(b)(2), (a)(1), the court will construe the lead plaintiffs' motion as one for a preliminary injunction.

For the reasons explained below, the lead plaintiffs have established the necessary elements to justify a mandatory preliminary injunction.

---

[8] "Whereas mandatory injunctions alter the status quo, prohibitory injunctions 'aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending.'" *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (quoting *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013)).

A.  Likelihood of success on the merits

      *i.  Due process claim: burden of proof*

The lead plaintiffs claim that Fifth Amendment due process entitles them, and all members of the proposed class, to a bond hearing where the government bears the burden of proving, by clear and convincing evidence, dangerousness or risk of flight. As explained above, neither the INA nor its implementing regulations speak to the burden of proof at § 1226(a) bond hearings, and the BIA has held that the burden lies with the noncitizen. *See Guerra*, 24 I. & N. Dec. at 37, 40. But, as the lead plaintiffs point out, when faced with challenges to the constitutionality of these hearings, district courts in the First, Second, Ninth, and Tenth Circuits have concluded that due process requires that the *government* bear the burden of justifying a noncitizen's § 1226(a) detention. *See, e.g., Singh v. Barr*, 400 F. Supp. 3d 1005, 1017 (S.D. Cal. 2019) ("[T]he Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving . . . that continued detention is justified at a § 1226(a) bond redetermination hearing."); *Diaz-Ceja v. McAleenan*, No. 19-CV-00824-NYW, 2019 WL 2774211, at *11 (D. Colo. July 2, 2019) (same); *Darko v. Sessions*, 342 F. Supp. 3d 429, 436 (S.D.N.Y. 2018) (same); *Pensamiento*, 315 F. Supp. 3d at 692 (same). While jurisdictions vary on the standard of proof required, *compare, e.g., Darko*, 342 F. Supp. 3d at 436 (clear and convincing standard) *with Pensamiento*, 315 F. Supp. 3d at 693 ("to the satisfaction of the IJ" standard), the "consensus view" is that due process requires that the burden lie with the government, *see Darko*, 342 F. Supp. 3d at 435 (collecting cases).

The defendants concede that "a growing chorus of district courts" have concluded that due process requires that the government bear the burden of proof at § 1226(a) bond hearings. (Opp'n at 22). But the defendants also point out that some courts to consider the issue have

concluded otherwise. In *Borbot v. Warden Hudson Cty. Corr. Facility*, the Third Circuit

analyzed a § 1226(a) detainee's claim that due process entitled him to a second bond hearing

where "[t]he duration of [] detention [was] the sole basis for [the] due process challenge." 906

F.3d 274, 276 (3d Cir. 2018). The *Borbot* court noted that the detainee "[did] not challenge the

adequacy of his initial bond hearing," *id.* at 276–77, and ultimately held that it "need not decide

when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new

bond hearing," *id.* at 280. But, in analyzing the detainee's claims, the *Borbot* court stated that it

"perceive[d] no problem" with requiring that § 1226(a) detainees bear the burden of proof at

bond hearings. *Id.* at 279. Several district courts in the Third Circuit have subsequently

concluded that *Borbot* compels a finding that due process does not require that the government

bear the burden of proof at § 1226(a) bond hearings. *See, e.g.*, *Gomez v. Barr*, No. 1:19-CV-

01818, 2020 WL 1504735, at *3 (M.D. Pa. Mar. 30, 2020) (collecting cases).

Based on its survey of the case law, the court is more persuaded by the reasoning of the

district courts in the First, Second, Ninth, and Tenth Circuits. "Freedom from imprisonment—

from government custody, detention, or other forms of physical restraint—lies at the heart of the

liberty that [the Fifth Amendment's Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690

(citation omitted). While detention pending removal is "a constitutionally valid aspect of the

deportation process," such detention must comport with due process. *See Demore v. Kim*, 538

U.S. 510, 523 (2003). Although the Supreme Court has not decided the proper allocation of the

burden of proof in § 1226(a) bond hearings, it has held, in other civil commitment contexts, that

"the individual's interest in the outcome of a civil commitment proceeding is of such weight and

gravity that due process requires *the state to justify confinement* by proof more substantial than a

mere preponderance of the evidence." *See Addington v. Texas*, 441 U.S. 418, 427 (1979)

(addressing the standard of proof required for mental illness-based civil commitment) (emphasis added).

Application of the *Mathews v. Eldridge* balancing test lends further support to the lead plaintiffs' contention that due process requires a bond hearing where the government bears the burden of proof. In *Mathews*, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. 319, 335 (1976). While the court acknowledges that requiring the government to bear the burden of proof at § 1226(a) hearings would impose additional costs on the government, those costs are likely outweighed by the noncitizen's significant interest in freedom from restraint, and the fact that erroneous deprivations of liberty are less likely when the government, rather than the noncitizen, bears the burden of proof. (*See* Decl. of Former Immigration Judge Denise Noonan Slavin ¶ 6, ECF 1-8 ("On numerous occasions, *pro se* individuals appeared before me for custody hearings without understanding what was required to meet their burden of proof. . . . *Pro se* individuals were rarely prepared to present evidence at the first custody hearing[.]"))

With respect to the quantum of proof required at § 1226(a) bond hearings, the court notes that "the overwhelming majority of district courts have . . . held that, in bond hearings under § 1226(a), due process requires the government to bear the burden of justifying detention by clear and convincing evidence." *Hernandez-Lara v. Immigration & Customs Enf't*, *Acting Dir.*, No.

19-CV-394-LM, 2019 WL 3340697, at *3 (D.N.H. July 25, 2019) (collecting cases). As the *Hernandez-Lara* court reasoned, "[p]lacing the burden of proof on the government at a § 1226(a) hearing to show by clear and convincing evidence that the noncriminal alien should be detained pending completion of deportation proceedings is more faithful to *Addington* and other civil commitment cases," *id*. at *6, "[b]ecause it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant," *id*. (quoting *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011)) (further citation omitted).

Moreover, on the quantum of proof question, the court finds instructive evolving jurisprudence on challenges to prolonged detention pursuant to 8 U.S.C. § 1226(c). As noted in note 2, *supra*, § 1226(c) mandates detention of noncitizens deemed deportable because of their convictions for certain crimes. *See Jennings*, 138 S. Ct. at 846. Although § 1226(c) "does not on its face limit the length of the detention it authorizes," *id*., the Supreme Court has not foreclosed the possibility that unreasonably prolonged detention under § 1226(c) violates due process, *id*. at 851. Indeed, many courts have held that when § 1226(c) becomes unreasonably prolonged, a detainee must be afforded a bond hearing. *See, e.g., Reid v. Donelan*, 390 F. Supp. 3d 201, 215 (D. Mass. 2019); *Portillo v. Hott*, 322 F. Supp. 3d 698, 709 (E.D. Va. 2018); *Jarpa,* 211 F. Supp. 3d at 717. Notably, courts in this district and elsewhere have ordered § 1226(c) bond hearings where the government bears the burden of justifying continued detention by clear and convincing evidence. *See Duncan v. Kavanagh*, --- F. Supp. 3d ----, 2020 WL 619173, at *10 (D. Md. Feb. 10, 2020); *Reid*, 390 F. Supp. 3d at 228; *Portillo,* 322 F. Supp. 3d at 709–10; *Jarpa*, 211 F. Supp. 3d at 721. As the *Jarpa* court explained, "against the backdrop of well-settled jurisprudence on the quantum and burden of proof required to pass constitutional muster in civil detention

proceedings generally, it makes little sense to give Mr. Jarpa at this stage fewer procedural protections than those provided to" civil detainees in other contexts. *See Jarpa*, 211 F. Supp. 3d at 722 (citing *United States v. Comstock*, 627 F.3d 513 (4th Cir. 2010)).

In light of the above, the court is satisfied that the lead plaintiffs have shown a likelihood of success on the merits of their claim that due process requires § 1226(a) bond hearings where the government must bear the burden of proving dangerousness or risk of flight. As to the quantum of proof required at these hearings, the court is persuaded that requiring a clear and convincing standard is in line with the Supreme Court's reasoning in *Addington*, as well as consistent with the bond hearings ordered in cases involving § 1226(c) detention.

> ii. *Due process claim: ability to pay and suitability for release on alternative conditions of release*

The lead plaintiffs also claim that Fifth Amendment due process entitles them, and all members of the proposed class, to a bond hearing where the IJ considers the noncitizen's ability to pay a set bond amount and her suitability for release on alternative conditions of supervision. The defendants counter that due process does not so require, and also asserts that at Mr. de la Cruz Espinoza's bond hearing, the IJ *did* consider his ability to pay, (Opp'n at 26).

As an initial matter, the court considers whether the IJ at Mr. de la Cruz Espinoza's bond hearing considered his ability to pay. According to the Complaint, there is no requirement that IJs in Baltimore Immigration Court consider an individual's ability to pay when setting a bond amount. (Compl. ¶ 27 & n.8). The defendants assert that because Mr. de la Cruz Espinoza's motion for bond included arguments about his financial situation, the IJ did, in fact, consider his ability to pay. (Opp'n at 26). The court is not persuaded. The fact that an argument was raised does not *ipso facto* mean it was considered. Neither the transcript of Mr. de la Cruz Espinoza's bond hearing, (ECF 15-11), nor the IJ's order of bond, (ECF 1-18), suggest that the IJ actually

considered ability to pay. Accordingly, without clear evidence to the contrary, the court accepts the lead plaintiffs' allegation that the IJ did not consider Mr. de la Cruz Espinoza's ability to pay when setting bond.

The question remains whether due process requires that an IJ consider ability to pay and suitability for alternative conditions of release at a § 1226(a) bond hearing. As explained above, detention pending removal must comport with due process. *See Demore,* 538 U.S. at 523. Due process requires that detention "bear[s] [a] reasonable relation to the purpose for which the individual [was] committed." *See Zadvydas*, 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Federal regulations and BIA decisional law suggest that the purpose of § 1226(a) detention is to protect the public and to ensure the noncitizen's appearance at future proceedings. *See* 8 C.F.R. §§ 1003.19, 1236.1; *Guerra*, 24 I. & N. Dec. at 38. But, the lead plaintiffs argue, when IJs are not required to consider ability to pay or alternative conditions of release, a noncitizen otherwise eligible for release may end up detained solely because of her financial circumstances.

Several courts to consider the question have concluded that § 1226(a) detention resulting from a prohibitively high bond amount is not reasonably related to the purposes of § 1226(a). In *Hernandez v. Sessions*, the Ninth Circuit held that "consideration of the detainees' financial circumstances, as well as of possible alternative release conditions, [is] necessary to ensure that the conditions of their release will be reasonably related to the governmental interest in ensuring their appearance at future hearings[.]" *See* 872 F.3d at 990–91. While the *Hernandez* court did not explicitly conclude that a bond hearing without those considerations violates due process, *see id*. at 991 ("due process *likely* requires consideration of financial circumstances and alternative conditions of release" (emphasis added)), the court in *Brito* did reach that conclusion, *see* 415 F.

Supp. 3d at 267. The *Brito* court held that, with respect to § 1226(a) bond hearings, "due process requires an immigration court consider both an alien's ability to pay in setting the bond amount and alternative conditions of release, such as GPS monitoring, that reasonably assure the safety of the community and the alien's future appearances." *Id.* at 267. Relatedly, in *Abdi v. Nielsen*, 287 F. Supp. 3d 327 (W.D.N.Y. 2018), which involved noncitizens held in civil immigration detention pursuant to 8 U.S.C. § 1225(b),[9] the court—relying on the Ninth Circuit's reasoning in *Hernandez*—held that "an IJ must consider ability to pay and alternative conditions of release in setting bond for an individual detained under § 1225(b)." *Id.* at 338. To hold otherwise, the *Abdi* court reasoned, would implicate "the due process concerns discussed in *Hernandez*, which are equally applicable to detentions pursuant to § 1225(b)."[10]

The court is persuaded by the reasoning of *Hernandez*, *Brito*, and *Abdi*. If an IJ does not make a finding of dangerousness or substantial risk of flight requiring detention without bond (as in Mr. de la Cruz Espinoza's case), the only remaining purpose of § 1226(a) detention is to secure a noncitizen's appearance at future proceeding.[11] The set bond amount, then, must be reasonably related to this purpose. But where a bond amount is set too high for an individual to pay, she is effectively detained without bond due to her financial circumstances. It is axiomatic that an individual may not be imprisoned "solely because of his lack of financial resources." *See*

---

[9] 8 U.S.C. § 1225(b) authorizes indefinite, mandatory detention for certain classes of noncitizens. *See Jennings*, 138 S. Ct. at 842 (citing 8 U.S.C. §§ 1225(b)(1) and (b)(2)).

[10] The court notes that both *Hernandez* and *Abdi* reference now-invalidated precedent in both the Ninth and Second Circuits requiring the government to provide civil immigration detainees periodic bond hearings every six months. *See Rodriguez v. Robbins*, 804 F.3d 1060, 1089 (9th Cir. 2015), *abrogated by Jennings*, 138 S. Ct. at 852; *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015), *abrogated by Jennings*, 138 S. Ct. at 852. But *Jennings*, which was decided on statutory interpretation grounds, explicitly did not include a constitutional holding. *See Jennings*, 138 S. Ct. at 851 ("[W]e do not reach th[e] [constitutional] arguments."). And, as the *Hernandez* court noted, "the Supreme Court's review of our holding . . . that noncitizens are entitled to certain unrelated additional procedural protections during the recurring bond hearings after prolonged detention does not affect our consideration of the lesser constitutional procedural protections sought at the initial bond hearings in this case." 872 F.3d at 983 n.8.

[11] The defendants offer no purpose for § 1226(a) detention beyond protecting the community and securing a noncitizen's appearance at future proceedings.

*Bearden v. Georgia*, 461 U.S. 660, 661–62, 665 (1983) (automatic revocation of probation for

inability to pay a fine, without considering whether efforts had been made to pay the fine,

violated due process and equal protection); *cf. Tate v. Short*, 401 U.S. 395, 398 (1971) ("The

Constitution['s equal protection clause] prohibits the State from imposing a fine as a sentence

and then automatically converting it into a jail term solely because the defendant is indigent and

cannot forthwith pay the fine in full."). In the pretrial detention context, multiple Courts of

Appeals have held that deprivation of the accused's rights "to a greater extent than necessary to

assure appearance at trial and security of the jail . . . would be inherently punitive and run afoul

of due process requirements." *See Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978)

(quoting *Rhem v. Malcolm*, 507 F.2d 333, 336 (2d Cir. 1974)) (quotation marks omitted); *accord*

*ODonnell v. Harris Cty.*, 892 F.3d 147, 157 (5th Cir. 2018); *see also Duran v. Elrod*, 542 F.2d

998, 999 (7th Cir. 1976); *accord Villarreal v. Woodham,* 113 F.3d 202, 207 (11th Cir. 1997).

There is no suggestion that the IJs in Baltimore Immigration Court impose prohibitively

high bond amounts with the intent of denying release to noncitizens who do not have the means

to pay. But without consideration of a § 1226(a) detainee's ability to pay, where a noncitizen

remains detained due to her financial circumstances, the purpose of her detention—the lodestar

of the due process analysis—becomes less clear. As the Ninth Circuit explained,

> Setting a bond amount without considering financial circumstances or alternative
> conditions of release undermines the connection between the bond and the
> legitimate purpose of ensuring the non-citizen's presence at future hearings. . . . [It
> is a] common-sense proposition that when the government detains someone based
> on his or her failure to satisfy a financial obligation, the government cannot
> reasonably determine if the detention is advancing its purported governmental
> purpose unless it first considers the individual's financial circumstances and
> alternative ways of accomplishing its purpose.

*Hernandez*, 872 F.3d at 991.

The defendants assert that an IJ need not consider a noncitizen's ability to pay a set bond

amount because it had a "reasonable basis to enact a statute that grants the Executive branch discretion to set bonds to prevent individuals, whose 'continuing presence in the country is in violation of the immigration laws,' from failing to appear," and that § 1226(a) passes muster under rational basis review. (Opp'n at 25–26 (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 491 (1999)). But the appropriate analysis for a procedural due process challenge is the *Mathews* balancing test, not rational basis review, which is used to analyze equal protection claims, *see, e.g., Schweiker v. Wilson*, 450 U.S. 221, 234–35 (1981), and substantive due process claims, *see, e.g., Hawkins v. Freeman*, 195 F.3d 732, 739 (4th Cir. 1999). And, in applying the *Mathews* test, the court agrees with the Ninth Circuit's conclusion that "the government's refusal to require consideration of financial circumstances is impermissible under the *Mathews* test because the minimal costs to the government of [] a requirement [that ICE and IJs consider financial circumstances and alternative conditions of release] are greatly outweighed by the likely reduction it will effect in unnecessary deprivations of individuals' physical liberty." *See Hernandez*, 872 F.3d at 993.

Accordingly, the court is satisfied that the lead plaintiffs have shown a likelihood of success on the merits of their claim that due process requires a § 1226(a) bond hearing where the IJ considers a noncitizen's ability to pay a set bond amount and the noncitizen's suitability for alternative conditions of release.

     *iii.   INA claim*

The lead plaintiffs' final claim is that "Section 1226(a), as correctly interpreted, requires that the bond or other conditions of release for detained individuals be reasonably calculated to secure the individual's appearance at future proceedings," and that "[a] reasonable bond or reasonable conditions of release cannot be determined without adequately considering detained

individuals' financial circumstances and whether nonmonetary conditions of release would sufficiently mitigate flight risk." (Compl. ¶¶ 74–75). The relief sought on this claim, however, is identical to that sought on the due process claim discussed in Part III.A.ii, *supra*: a preliminary injunction requiring a bond hearing where an IJ considers a noncitizen's ability to pay a set bond amount and the suitability of alternative conditions of release. As the court has already found a likelihood of success on the merits of that claim, the court need not address the INA claim in order to grant the relief sought. Accordingly, the court will not at this time discuss the merits of this claim.

### B.  Irreparable harm

Having found that the lead plaintiffs have shown a likelihood of success on the merits of their constitutional claims, the court turns to the second requirement for obtaining a preliminary injunction: a showing of irreparable harm. The deprivation of a constitutional right, "for even minimal periods of time, unquestionably constitutes irreparable injury." *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord Hernandez*, 872 F.3d at 994. As the Ninth Circuit explained in *Hernandez*,

> it follows inexorably from our conclusion that the government's current policies are likely unconstitutional—and thus that members of the plaintiff class will likely be deprived of their physical liberty unconstitutionally in the absence of the injunction—that Plaintiffs have also carried their burden as to irreparable harm.

*Hernandez*, 872 F.3d at 995. The court agrees.

The lead plaintiffs also argue that the potential for irreparable harm has "escalated precipitously" in light of the COVID-19 pandemic. (Mot. at 29). COVID-19, the infectious respiratory disease caused by the novel coronavirus, poses particular risks to those in correctional and detention facilities. The Centers for Disease Control ("CDC") has warned that once introduced, COVID-19 may spread more quickly in detention facilities relative to other

environments. *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html; *see also Coreas v. Bounds*, --- F.3d ---- 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."). This is due in part to the close living arrangements of detainees, which impede social distancing efforts, and also because many facilities limit access to soap and paper towels, and prohibit alcohol-based hand sanitizers. *Interim Guidance,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html; *see also Coreas*, 2020 WL 1663133, at *2; (Decl. of Dr. Jaime Meyer ¶¶ 9, 11, 29, 33, ECF 1-26). Moreover, there is an increased risk of developing serious illness related to COVID-19 for individuals with certain underlying health conditions. *See Coronavirus Disease 2019 (COVID-19): People Who Are at Higher Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. While the lead plaintiffs do not allege that they have underlying conditions placing them at higher risk, this may not be true of other members of the proposed class. (*See* Dr. Meyer Decl. ¶ 15 ("[P]eople in jails and prisons are more likely than people in the community to have chronic underlying health conditions, including diabetes, heart disease, chronic lung disease, chronic liver disease, and lower immune systems from HIV."). Moreover, at least one court to consider the question has found that the "increased likelihood of severe illness and death [from COVID-19] if a preliminary injunction is not entered" constitutes irreparable harm. *See Fraihat v. U.S. Immigration & Customs Enf't*, --- F. Supp. 3d ----, 2020 WL 1932570, at *1, 27 (C.D. Cal. Apr. 20, 2020) (where proposed class members were detainees with a range of serious health conditions).

Accordingly, the lead plaintiffs have shown irreparable harm on the basis of their continued detention pursuant to a bond hearing that was likely constitutionally deficient. While the court need not find that the COVID-19 pandemic presents an independent basis for irreparable harm, the court considers the proposed class members' heightened risk of contracting COVID-19 while detained as a factor strengthening their showing.

C.  Balance of the equities and the public interest

Turning to the third and fourth requirements for obtaining a preliminary injunction, the court notes that the balancing of the harm and the public interest merge when the government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, it is clear that these factors weigh in favor of granting injunctive relief. Despite the defendants' assertion to the contrary, the granting of a preliminary injunction does not seriously infringe on the government's interest in enforcing its immigration laws. (*See* Opp'n at 29). Rather, the requested injunction would simply require the government to provide the proposed class members with new bond hearings where additional procedures are observed. While the court acknowledges this would impose costs on the government, "[f]aced with such a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *See Hernandez*, 872 F.3d at 996 (citation and quotation marks omitted). Moreover, "it is always in the public interest to prevent the violation of a party's constitutional rights." *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (further citation omitted).

D.  Sufficiently demanding circumstances

As noted above, because the lead plaintiffs seek a mandatory rather than prohibitory

preliminary injunction, they must also establish that "a mandatory preliminary injunction [is] necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." *In re Microsoft*, 333 F.3d at 526. This heightened standard is necessary because "[m]andatory preliminary injunctions generally do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Id.* (citation, quotation marks, and alterations omitted). In other words, "the circumstances [must be] sufficiently demanding for the award of mandatory relief." *E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 830 (4th Cir. 2004).

Here, the lead plaintiffs have demonstrated that the exigencies of the situation demand the mandatory preliminary injunction sought. As explained above, the lead plaintiffs have shown that they are likely to succeed on the merits of their constitutional claims. Consequently, their continued detention pursuant to bond hearings that likely do not comport with due process "unquestionably constitutes irreparable injury." *See Elrod*, 427 U.S. at 373; *see also Brito*, 415 F. Supp. 3d at 270 (noting that loss of liberty is a "severe form of irreparable injury" (citation omitted)). In *Sage*, which involved a gas company's request for a mandatory preliminary injunction to obtain immediate possession of property to build a gas pipeline, the Fourth Circuit found that the heightened standard for seeking a mandatory preliminary injunction was satisfied where prompt relief was necessary to serve important public interests "in good time." *Sage*, 361 F.3d at 818, 830. In further justifying its conclusion that a mandatory preliminary injunction was appropriate, the Fourth Circuit stated that "without this mandatory relief, [the gas company] would face other irreparable harm such as increased construction costs and losses from its breach of gas supply contracts." *Id*. Here, the public interest is similarly served by the award of prompt

relief, *see supra* Part III.C, and the "other irreparable harm" that the lead plaintiffs and members of the proposed class face—namely, the heightened risk of contracting COVID-19—is significantly more serious than the potential monetary losses in *Sage*. *Cf. Coreas*, 2020 WL 1663133, at *13 ("[I]n the event that a detainee or staff member were found to have COVID-19, . . . there would be a high likelihood of irreparable health consequences [for petitioners with underlying health conditions] that could not be alleviated without release."). Accordingly, the court finds that the circumstances here are "sufficiently demanding" to justify the imposition of a mandatory preliminary injunction. *See Sage*, 361 F.3d at 830.

## IV.    Scope of relief

Having found that the imposition of a preliminary injunction is warranted here, the only question remaining is the scope of injunctive relief. "[C]ourts may enter class-wide injunctive relief before certification of a class." *J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367, 376 (D. Md. 2019) (citing *Rodriguez v. Providence Community Corrections*, 155 F. Supp. 3d 758, 766 (M.D. Tenn. 2015); *Newberg on Class Actions* § 4:30 (5th ed. 2013)). On behalf of themselves and the members of the proposed class, the lead plaintiffs seek an injunction requiring the Executive Office of Immigration Review ("EOIR") to ensure that § 1226(a) detainees receive bond hearings at the Baltimore Immigration Court that comport with due process. (*See* ECF 15-18). The lead plaintiffs also ask the court, *inter alia*, to enjoin EOIR to provide each class member currently detained with a bond hearing complying with the above requirements within fourteen days. (*Id.*). The defendants do not mount any specific challenges to the scope of injunctive relief requested.

Based on the court's finding that significant constitutional rights are at stake, and the risk of irreparable harm, the court will issue a class-wide preliminary injunction mandating that §

1226(a) bond hearings implement procedures that adequately protect the due process rights of noncitizens. At these bond hearings, the government must bear the burden of justifying continued detention by clear and convincing evidence, and the IJ must consider the noncitizen's ability to pay a set bond amount and suitability for release on alternative conditions. The court will order (1) that Mr. de la Cruz Espinoza receive a new bond hearing within 21 days, and (2) that future § 1226(a) bond hearings in this district comport with the above requirements. Moreover, the court will order the parties to confer within 21 days and develop a plan for promptly identifying and providing new bond hearings to § 1226(a) detainees currently held pursuant to hearings that did not comport with the above requirements. Additional details of the preliminary injunction will be articulated in an order issued concurrently with this memorandum.

## CONCLUSION

For the foregoing reasons, the court will grant the lead plaintiffs' motion for a TRO and/or a preliminary injunction, (ECF 15), construed as a preliminary injunction. The court will order relief narrowly tailored to resolve the deficiencies in the Baltimore Immigration Court's current § 1226(a) bond hearing procedures. A separate order follows, which will detail the obligations of the parties in fulfilling the mandates of the injunction.


5/29/20
_____
Date

/S/
_____
Catherine C. Blake
United States District Judge